UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLTON L. GROOMS,

    Petitioner,

v.                                              Case No. 8:07-cv-386-T-23MAP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## O R D E R

Grooms petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for robbery, for which Grooms serves thirty years. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 27) The respondent admits the petition's timeliness. (Response at 5, Doc. 27)

## **FACTS**[1]

A Dillard's Department Store employee, who was operating the store's security camera, observed and recorded Grooms stealing three children's leather jackets valued at $255. Thomas Stein, a Clearwater police officer, was "off duty" but in full uniform working as a security officer inside the store. The store employee alerted Stein about the theft. Grooms disregarded Stein's order to halt and fled to his car.

---

[1] This summary of the facts derives from Grooms's brief on direct appeal. (Respondent's Exhibit 1)

When Stein was a few feet from the driver's side of the front of the car, Grooms began driving toward the officer. Fearing for his life, Stein fired one shot into the car's windshield, moved out of the path of the car, and fired two more shots as or after the car passed. A few days later the vehicle was found and Grooms was arrested.

The third amended information charged Grooms with aggravated assault on a law enforcement officer, robbery, and obstructing or resisting an officer without violence. A jury found Grooms guilty of robbery and resisting an officer without violence but not guilty of aggravated assault. Grooms was sentenced to thirty years as a habitual felony offender.

## PROCEDURAL HISTORY

This case was dismissed as time-barred (Doc. 4), a determination that was reversed (Doc. 12) based on a calculation error. After the respondent filed his response this case was stayed and administratively closed (Doc. 19) because Grooms had timely commenced a state Rule 3.850 motion for post-conviction relief. Grooms filed an amended petition (Doc. 24) when the case was re-opened. The initial response (Doc. 27) was determined insufficient. (Doc. 37) Following the filing of a supplemental response (Doc. 38) and several extensions of time, Grooms replied. (Doc. 45) This case proceeds based on the amended petition, response to the amended petition, supplemental response, and reply. (Doc. 24, 27, 38, and 45)

The amended petition asserts one ground of ineffective assistance of counsel and two grounds of trial court error. In his final reply, Grooms specifically abandons

ground three, which challenges the validity of his conviction based on the cumulative effect of the trial court's errors. Ground two (trial court error) is addressed before ground one (ineffective assistance of counsel).

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United

> States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal court must afford due deference to a state court's decision. "AEDPA prevents

- 4 -

defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Grooms bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Grooms's convictions and sentence. (Respondent's Exhibit 4)

Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Grooms's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 12)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("[A] summary adjudication—a state court decision denying a petitioner's claim without an accompanying statement of reasons—is an adjudication on the merits under AEDPA.").

Ground Two:

     Liberally construing this ground, Grooms alleges two claims that the trial court erred in limiting the cross-examination of Stein.  First, Grooms challenges the trial court's refusal to allow him, as co-counsel, to personally cross-examine Stein.  Second, Grooms challenges the trial court's restricting Grooms's cross-examination of Stein on an issue that Grooms contends challenges Stein's motive for testifying.

Initially Grooms was permitted to represent himself, but counsel was later appointed at Grooms's request. When Grooms expressed an interest in personally cross-examining a witness, the trial court rejected Grooms's request as an improper attempt to proceed as co-counsel (Respondent's Exhibit 16, vol. 4 at 197-99]:

> [Defense Counsel]: Judge, I think my client has indicated that he wishes to proceed *pro se*.
>
> The Defendant: Not *pro se*, but co-counsel, because I feel --
>
> The Court: I don't appoint people co-counsel, you either have a lawyer or you don't. You've got a lawyer. Mr. Studer has been your attorney since this case has been going on, right?
>
> The Defendant: Yes, he has.
>
> The Court: He's picked the jury for you, right?
>
> The Defendant: Yes, he has.
>
> The Court: He's made an opening statement for you, hasn't he? Hasn't he?
>
> The Defendant: Yes, he has.
>
> The Court: All right. He's been questioning witnesses, correct?
>
> The Defendant: I don't feel they're thoroughly being questioned.
>
> The Court: Well, I've got news for you. He was wanting to ask one question, and he wanted to use a deposition to impeach the witness with, and I told him that he couldn't do it.
>
> The Defendant: Why was that, sir?
>
> The Court: I don't need to explain my ruling to you. I said it would have been an improper impeachment. All right? So do you have any other complaints?
>
> The Defendant: So I'm being denied the right to be proceeding as co-counsel?
>
> The Court: Co-counsel? Correct.
>
> . . . .

> The Defendant: I'd just like to let the record reflect that I've been denied the right to proceed as co-counsel.
>
> The Court: You are correct. You've been denied the right to go as co-counsel.

Grooms cites no Supreme Court precedent that requires permitting him to appear as co-counsel, commonly called "hybrid representation." To the contrary, Grooms has no constitutional right to hybrid representation. *See cases collected at Cross v. United States*, 893 F.2d 1287, 1291-92 (11th Cir. 1990). *See also United States v. Tannehill*, 305 Fed. App'x 312, 614 (11th Cir. 2008) ("Whether to permit a defendant to proceed in a hybrid fashion rests in the sound discretion of the trial court."). Consequently, the state court's refusal to recognize Grooms as co-counsel and to permit him to cross-examine witnesses is neither contrary to, nor an unreasonable application of, controlling Supreme Court precedent.

Grooms also contends that the trial court improperly restricted his counsel from cross-examining Stein on an issue that Grooms contends challenges Stein's motive for testifying against Grooms. Although he has a constitutional right to confront his accuser, a defendant's right to cross-examine is not unfettered, as *Olden v. Kentucky*, 488 U.S. 227, 231 (1988), explains:

> [A] petitioner's Sixth Amendment right "to be confronted with the witnesses against him," [a right that is] incorporated in the Fourteenth Amendment and therefore available in state proceedings, *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), includes the right to conduct reasonable cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315-316, 94 S. Ct. 1105, 1109-10, 39 L. Ed. 2d 347 (1974).

> In *Davis v. Alaska*, we observed that, subject to "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation . . ., the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id.*, at 316, 94 S. Ct., at 1110. We emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.*, at 316-317, 94 S. Ct. at 1110, *citing Greene v. McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 1413, 3 L. Ed. 2d 1377 (1959). Recently, in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986), we reaffirmed *Davis*, and held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" 475 U.S., at 680, 106 S. Ct., at 1436, *quoting Davis, supra*, 415 U.S., at 318, 94 S. Ct., at 1111.

"Internal Affairs" within the Clearwater Police Department investigated Stein's firing his gun. In cross-examining Stein, defense counsel inquired about the internal investigation but the trial court stopped the line of questioning when counsel asked whether Stein had hired an attorney to represent him during that investigation (Respondent's Exhibit.16, vol. 4 at 155-56):

> Defense Counsel:  Now, you were investigated by Internal Affairs over this incident?
>
> Stein:  And the detective bureau.  Yes, sir.
>
> Defense Counsel:  And did you hire an attorney to represent you?
>
> [Assistant State Attorney]:  Objection.  Relevance.
>
> Defense Counsel:  And did you hire an attorney to assist you?
>
> The Court:  Excuse me.  You want to approach the bench?
>
> (BENCH CONFERENCE)
>
> The Court:  All right.  There was an objection to that question.  Do you wish to be heard?

> Defense Counsel: Yes, sir. Judge, this goes to motive. Motive for him to state that he shot in self defense because there was an ongoing investigation, and he'd have to testify in that matter.
>
> The Court: The objection is sustained. It would be an improper question to ask him whether he hired an attorney.
>
> (BENCH CONFERENCE CONCLUDED)
>
> The Court: You may proceed.

Defense counsel continued to cross-examine Stein but counsel did not resume his inquiry into the internal investigation. The trial court precluded defense counsel from asking Stein about Stein's hiring an attorney but not about the internal investigation. As a consequence, Grooms's right to cross-examine Stein about Stein's motive to testify—that the department was investigating Stein's claim "that he shot in self defense because there was an ongoing investigation"—was not unduly restricted by the trial court's ruling that "it would be an improper question to ask [Stein] whether he hired an attorney." Grooms fails to meet his burden of showing that the state court's restriction on cross-examination was either "contrary to" or "an unreasonable application of" controlling Supreme Court precedent. Both claims in ground two lack merit.

Ground One:

Grooms alleges that his trial counsel rendered ineffective assistance, which claim is difficult to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*,

13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Grooms must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Grooms must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Grooms cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers,

in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Grooms must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Although the post-conviction court's order (Respondent's Exhibit 8) omits citing *Strickland* as the standard for an ineffective assistance of counsel claim, no explicit citation is required. A state court need not cite Supreme Court precedent (or

even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-86 (11th Cir. 2003). In Florida, *Strickland* governs an ineffective assistance of counsel claim. *Walls v. State*, 926 So.2d 1156 (Fla. 2006). The state post-conviction court analyzed Grooms's ineffective assistance of counsel claims consistent with *Strickland*. Consequently, Grooms must show that the state court's ruling was either an unreasonable application of *Strickland*'s principle or an unreasonable determination of the facts. The presumption of correctness and the highly deferential standard of review requires that the analysis of Grooms's claim begin with the state court's analysis.

Grooms alleges that his trial counsel rendered ineffective assistance by failing to request a special jury instruction that aggravated assault and robbery were legally interlocking charges. He contends that the not-guilty verdict for the aggravated assault charge is inconsistent with the guilty verdict for the robbery charge. The post-conviction court rejected this claim as follows (Respondent's Exhibit 8 at 1-2) (citations to the record omitted) (emphasis original):

> [T]he Defendant alleges that his trial counsel was ineffective for failing to request a special jury instruction on legally interlocking charges. Specifically, the Defendant alleges that it was necessary for the jury to find him guilty of aggravated assault on a law enforcement officer in order to prove the putting in fear element of the robbery charge, and that the jury should have been instructed that if they did not find him guilty of the aggravated assault charge beyond a reasonable doubt, they must also find him not guilty of the robbery charge. Accordingly, the Defendant alleges that the putting in fear element of the robbery charge was not proven because the jury found him not guilty of the aggravated assault on a law enforcement officer charge.

The Defendant's claim is without merit. While inconsistent verdicts based upon legally interlocking charges are not permissible, inconsistent verdicts based upon factually interlocking charges are. *See State v. Cappalo*, 932 So. 2d 331, 334 (Fla. 2d DCA 2006). Inconsistent verdicts based on factually interlocking charges are permissible because even if the facts support a conviction the jury can exercise its "inherent authority to acquit." *State v. Cappalo*, 932 So. 2d 331, 334 (Fla. 2d DCA 2006) *quoting State v. Connelly*, 748 So. 2d 248, 253 (Fla. 1999).

Robbery is not predicated as a matter of law on aggravated assault on a law enforcement officer. The elements of robbery which must be proven are 1) that the defendant took money or property from the person or custody of the victim, 2) that force, violence, assault, or putting in fear was used in the course of the taking, 3) that the property taken was of some value, and 4) that the taking was with the intent to permanently or temporarily deprive the victim of their right to the property or any benefit from it. While the second element may be proven by an assault, it is not required.

The three elements required to prove the crime of assault are 1) that the defendant intentionally and unlawfully threatened, either by word or by act, to do violence to the victim, 2) that the defendant appeared to have the ability to carry out the threat, and 3) the act of the defendant created in the mind of the victim a well-founded fear that violence was about to take place. In addition, aggravated assault on a law enforcement officer and all of the lesser included offenses include a fourth element which is that the assault was made with a deadly weapon. If the jury found that the State failed to prove <u>any</u> <u>one</u> of these elements it was required to find the Defendant not guilty of the aggravated battery on a law enforcement officer and of the lesser included offenses.

Moreover, the Defendant's trial counsel made a motion for a judgment of acquittal at the end of the State's case based in part on the State's failure to show evidence of "willful intent to use force, violence or putting in fear" with regard to the robbery count. This Court denied the motion and the denial was affirmed on appeal.

Although Grooms's allegation presents a federal claim, the underlying basis for his claim of ineffective assistance of counsel—that he was entitled to a special jury instruction on legally interlocking charges—depends on an interpretation of state law. Generally, a federal court is bound by a state court's interpretation of state law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors

- 15 -

of state law. . . .", *Breedlove v. Moore*, 279 F.3d 952, 963-64 (11th Cir. 2002) ("The Florida Supreme Court is the final arbiter of Florida evidentiary law; federal courts must respect that law absent a constitutional violation."), *cert. denied*, 538 U.S. 995 (2003), and *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992) ("State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases."), *cert. denied*, 507 U.S. 975 (1993).

The post-conviction court determined that, under state law, Grooms was not entitled to a special instruction. The court reasoned that, in Grooms's case, the aggravated assault and robbery charges were factually distinguishable and that, as a consequence, a special instruction was not warranted. In discussing the elements for the aggravated assault, the post-conviction court noted that the jury would have to find that Grooms used a deadly weapon to find him guilty of aggravated assault on a law enforcement officer or one of the lesser included offenses, and the state's failure "to prove <u>any one</u> of these elements" required a finding of not guilty of "the aggravated battery on a law enforcement officer and of the lesser included offenses." The two charges were not interlocking because robbery requires no use of a deadly weapon. Based on the state post-conviction court's determination that state law did not require a special instruction, counsel's failure to request the instruction was

neither deficient performance nor prejudicial.  The state court's rejection of ground one was not an unreasonable application of *Strickland*.

Accordingly, Grooms's amended petition for the writ of habeas corpus (Doc. 24) is **DENIED**.  The clerk shall enter a judgment against Grooms and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Grooms is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Grooms must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Grooms fails to show that reasonable jurists would debate the merits of the claims, Grooms cannot meet *Slack*'s prejudice requirement.  529 U.S. at 484.  Finally, Grooms is not entitled to appeal *in forma pauperis* because he is not entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Grooms must pay the full $455 appellate filing fee without installments unless the circuit court allows Grooms to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on September 28, 2012.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE